**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRENT J. JOHNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-CV-1121 AGF |
| | ) | |
| CITY OF FLORISSANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Brent Johns filed this action pro se alleging claims under 42 U.S.C. §
1983 and state-law tort claims of assault and intentional infliction of emotional distress
against several Florissant Police Officers related to violations of his rights during and
after his arrest on March 1, 2017.  This matter is before the Court on the motion for
summary judgment filed by Defendants.  Doc. No. 50.  Plaintiff did not file a brief in
opposition and the time to do so has passed, although on July 27, 2020 he filed a
document titled "Statement of Material Facts" and accompanying exhibits. Doc. Nos. 60-
61.  For the reasons set forth below, the motion for summary judgment will be granted.

## BACKGROUND

Plaintiff's claims stem from the events surrounding his arrest on March 1, 2017.
Defendants filed their motion for summary judgment on March 3, 2020, along with a
Statement of Uncontroverted Material Facts in support of their motion.  Doc. Nos. 50-52.
Defendants deposed Plaintiff Brent Johns on February 11, 2020; excerpts from his

deposition support their motion for summary judgment.  Doc. No. 52-1.  Defendants also relied upon the sworn affidavits of Defendants Steven Beckman, Anthony Mocca, Brian Panus, Joshua Smith, and Stephen Williams, the records from Plaintiff's post-arrest examination at Christian Hospital, Plaintiff's medical records from the Saint Louis County Department of Health, a copy of the charges filed against Plaintiff after his arrest, the transcript of Plaintiff's guilty plea and sentencing for the charges stemming from his arrest on March 1, 2017, a series of images taken of Plaintiff after his arrest, and a police interview of Plaintiff after his arrest.  Doc. No. 52.

Plaintiff was required to file his opposition to Defendants' summary judgment motion on April 29, 2020.  He filed no response.  On March 9, 2020, this Court ordered Plaintiff to show cause by June 23, 2020 why summary judgment should not be granted. Doc. No. 57.  On July 10, 2020, Plaintiff sent a letter to the Court asking for an update, in which he appeared to be unaware of the order to show cause.  The Court extended Plaintiff's deadline to show cause to July 27, 2020 and resent the Court's June 9, 2020 Order to Plaintiff.  Doc. No. 59.

Plaintiff then filed a series of motions and documents, including a document titled "Statement of Material Facts" and accompanying exhibits.  Doc Nos. 60-61, 63, 66-67, 72.  Plaintiff's purported statement of material facts did not comply with Local Rule 4.01(E).  Rather than responding to Defendant's statement of material facts in separately numbered paragraphs and pointing to the parts of the record in this case that support Plaintiff's assertion, Plaintiff's statement of material facts was a list of conclusory allegations without citation to the record, accompanied by one hundred pages and two

2

CDs of exhibits which he does not reference.  Doc Nos. 60-61.  Plaintiff's exhibits supporting his statement of facts include his initial complaint and a letter he wrote to the Court claiming Smith has been fired and charged for running over a suspect with his car. Plaintiff also filed excerpts of his deposition—the same excerpts Defendants filed—along with a series of images that appear to have been photo-copied and are mostly undiscernible, several articles about Smith, and an estimate for cost the repairs for the damage Plaintiff's car suffered during the incident.  Doc. No. 61.

This Court denied Plaintiff's motions and ordered Plaintiff to file a final response to Defendants' motion for summary judgment and specific responses to Defendants' Statement of Material Facts, informing Plaintiff the Court will not grant any further extension of time to respond to Defendant's motion for summary judgment.  Doc. No. 76. Plaintiff did not file a response to Defendants' motion for summary judgment, nor did he file specific responses to Defendants' statement of material facts.  Instead, Plaintiff sent a letter to the Court asking that his case be allowed to proceed to trial.  Doc. No. 77.

Even when Plaintiff's *pro se* pleadings are construed broadly, Plaintiff has failed to rebut the assertions in Defendants' Statement of Uncontroverted Material Facts.  Thus, all facts, except as otherwise noted, in Defendants' Statement of Uncontroverted Material Facts are deemed admitted by the Court. Local Rule 7–4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."); *see also Naugles v. Dollar General, Inc.,* No. 4:08CV01943 ERW, 2010 WL 1254645, at *1 (E.D.Mo. Mar. 24, 2010) (deeming facts in defendant's statement of material facts admitted where a *pro se*

plaintiff failed to file a statement of material facts in accordance with Local Rule 7–4.01(E)).  All citations are to Defendants' Statement of Material Facts unless otherwise noted.  Doc. No. 52.

Officer Beckman and Officer Panus initiated a traffic stop of Plaintiff's vehicle in Florissant Missouri on March 1, 2017.  Plaintiff provided Officer Panus with false identification.  When the officers told Plaintiff his information was not valid and asked him to exit the car, he fled in his car.  The officers followed Plaintiff through residential neighborhoods, proceeding to Versailles Drive after they received information that Plaintiff had turned onto the road.  Smith also drove to Versailles Drive to intercept Plaintiff.  Beckman, Panus, and Smith arrived at the cul-de-sac where Moule Drive and Versailles Drive converge.

Plaintiff drove his vehicle to the cul-de-sac.  Plaintiff testified in his deposition that he then shifted his vehicle into reverse and put his hands out of the car window. Officers Smith and Beckman both noticed the reverse lights were on, indicating Plaintiff's vehicle was not parked and raising concern that Plaintiff might attempt to flee in his vehicle.

The parties agree that Smith and Plaintiff's vehicles collided at the cul-de-sac. However, they disagree about whether Smith hit Plaintiff or Plaintiff hit Smith.  Smith alleges in his affidavit that his vehicle was struck by Plaintiff's vehicle at the cul de sac. In Plaintiff's deposition, Plaintiff testifies that after stopped his car at the cul-de-sac "Smith's car plowed into my vehicle from the driver's side…I was not mobile at all.  I was actually stationary."  Doc No. 52-1 at 20.  Plaintiff estimated when Smith's vehicle

4

hit his, Smith "was probably going 20 miles an hour, maybe.  Possibly less than that, but it wasn't—it wasn't like he was trying to kill me." *Id*.  As a result of the impact, Plaintiff claimed the car door hit him in the chest and he was knocked "back a little bit." *Id*. Plaintiff does not allege he sustained any physical injuries as a result of Smith hitting his vehicle.  The parties agree that seconds after the vehicles collided, Officer Beckman approached Plaintiff and tasered him without warning, causing him to lose control and hit his head on the door of his vehicle.  Seconds after Officer Beckman tasered him, Plaintiff drove away.

Plaintiff then drove to Marco's Pizza, where Defendants Mocca, Panus, Smith, and Beckman discovered him crouching on his hands behind the building.  Sergeant Mocca and  Officers Panus, Smith and Beckman approached him while he was lying face down with his hands underneath his body.  The officers told Plaintiff to show them his hands, but he did not.  The officers then attempted to hold Plaintiff down and pull his hands behind his back so he could be handcuffed.  The officers were on Plaintiff's body as they attempted to handcuff him.  Plaintiff kicked and punched at them.  Officer Smith used his baton to strike Plaintiff.  Eventually, Officer Panus handcuffed Plaintiff. Plaintiff testified that several seconds after his hands were cuffed, Sargent Mocca told the officers "that's enough" and the use of force stopped.  Plaintiff received only minor injuries.

After his arrest, Plaintiff was taken to Christian Hospital Northwest.  None of the officers involved in Plaintiff's arrest threatened to injure him if he received medical treatment.  Plaintiff attempted to decline treatment at the hospital, but he nevertheless

5

underwent a medical examination.  The nurse noted that he was "well-appearing; well-nourished; in no apparent distress," he is "easily ambulatory" and "alert...follows commands without difficulty," and his head was normal, although he did have an abrasion on his forehead.  Plaintiff was examined seven more times by medical personnel in the jail in the course of the following week.  He did not indicate he needed medical care, nor did the nurse note any significant wounds or medical conditions in need of treatment.

Plaintiff was charged with four felony offenses as a result of the March 1, 2017 incident.  Count I charged him with second degree assault against a special victim—Officer Panus.  Counts II and IV charged him with resisting arrest as a class E felony.  Count III charged him with second degree assault against a special victim—Officer Smith.  On August 3, 2018, Plaintiff pled guilty via an *Alford*[1] plea to Counts II and IV.  The remaining charges were dismissed as part of the plea agreement.

Count II stemmed from the first encounter in the cul-de-sac and alleged that while Officer Panus was attempting to stop Plaintiff's vehicle, Plaintiff

> knew or reasonably should have known that the officer was making a lawful stop, and, for the purpose of preventing the officer from effecting the stop, resisted the stop of [Plaintiff] by fleeing from the officer, and [Plaintiff] fled in such a manner that created a substantial risk of serious physical injury or death to other persons in that [Plaintiff] operated a motor vehicle at a high

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970). In *Alford*, the Supreme Court explained that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id*. at 37.  The Court further explained that "[t]he standard [for accepting guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *Id*. at 31.

rate of speed in a residential area, striking at least one other vehicle and failing to yield to oncoming traffic.

Count IV stemmed from the second encounter behind Marco's Pizza and alleged that while the officers were attempting to arrest Plaintiff, Plaintiff "knew or reasonably should have known that the officers were making an arrest, and, for the purpose of preventing the officers from effecting the arrest, resisted the arrest of [Plaintiff] by using or threatening the use of violence or physical force." Doc. No. 52 ¶ 182.

As part of his *Alford* plea, Plaintiff admitted as to Count II that he fled a traffic stop and sped away in a fashion that could have put others at risk. Plaintiff further admitted the State had sufficient evidence such that a jury could convict him beyond a reasonable doubt as to Count IV, but Plaintiff did not acknowledge that he was guilty of the charged conduct.

Plaintiff initially brought his action pursuant to 42 U.S.C. § 1983 against twelve defendants: The City of Florissant; officers Panus, Beckman, Smith, Williams, and Phil Busby; Florissant Mayor Tom Schnieder; St. Louis County; the Federal Bureau of Investigation (FBI); Florissant Police Chief Timothy Lowery, Sergeant Mocca; and Lieutenant Dennis Dehart. On March 13, 2019, this Court dismissed all claims against the Florissant Police Department, the FBI, the City of Florissant, St. Louis County, Phil Busby, Mayor Schnieder, Chief Lowery, and Lieutenant Dehart. Doc. No. 7. This Court also dismissed all false arrest, false imprisonment, and conspiracy claims, and all official capacity claims against Defendants Beckman, Mocca, Smith, Panus, and Williams. *Id.* Plaintiff's remaining claims are for excessive force, failure to intervene, assault and

battery, and intentional infliction of emotional distress against Defendants Beckman,

Mocca, Panus, and Smith; failure to supervise against Defendant Mocca; and failure to

provide adequate medical care against Defendants Beckman, Panus, and Williams.

## **DISCUSSION**

## **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be

granted "if the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law."  "[T]he burden of demonstrating that

there are no genuine issues of material fact rests on the moving party," and the court must

view "the evidence and the inferences that may be reasonably drawn [therefrom] in the

light most favorable to the non moving party."  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th

Cir. 2015) (internal citations omitted).  "'Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment.'"  *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson*,

477 U.S. at 248.

## **Excessive Force**

Plaintiff raises three claims of excessive force—two stemming from the incident at

the cul-de-sac and one stemming from the incident behind Marco's Pizza.  First, he

alleges that Smith used excessive force when Smith rammed his vehicle into the

Plaintiff's car at the cul-de-sac.  Second, he alleges Beckman used excessive force when

he tasered Plaintiff at the cul-de-sac.  Third, he alleges that Beckman, Mocca, Smith, and

Panus used excessive force when they beat him behind Marco's Pizza.  Defendants claim

they are entitled to summary judgment both because Plaintiff has failed to allege any material facts showing that Defendants violated his constitutional rights and because they are entitled to qualified immunity since their actions are not violations of a clearly established constitutional right.  On this record, the Court finds that Defendants are entitled to summary judgment.

"To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018).  "The district court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

With respect to the second prong, "'clearly established law' should not be defined 'at a high level of generality.'"  *Morgan v. Robinson*, No. 17-1002, 2019 WL 1497073, at *2 (8th Cir. Mar. 29, 2019) (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)). "Instead, the clearly established law must be 'particularized' to the facts of the case."  *Id.* There need not be "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law."  *White*, 137 S. Ct. at 551.

The Supreme Court has stressed that "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will

apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (citation omitted).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397.

As described above, the "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force." *Id.* (citation omitted).

Claim against Smith

10

Plaintiff first contends that Smith rammed his car into Plaintiff's vehicle at the cul-de-sac and this amounted to excessive force.  Defendants submitted evidence in the form of the Smith's sworn affidavit that Plaintiff hit Smith's vehicle, not, as Plaintiff alleges in his complaint, that Smith hit Plaintiff's vehicle.  Plaintiff testified in his deposition that Smith rammed his vehicle into Plaintiff's car.  Taking Plaintiff's testimony as true, Smith is entitled to qualified immunity.

An officer is entitled to use reasonable force to prevent a suspect from fleeing and evading arrest. Plaintiff admits that he fled the initial traffic stop.  Plaintiff stopped at the cul-de-sac, but he did not park his car.  Instead, he shifted his vehicle into reverse. Officer Smith noticed Plaintiff's vehicle was in reverse and believed Plaintiff might drive away.  Smith then struck Plaintiff's vehicle with his car.  Plaintiff estimated that Smith was going 20 miles per hour or less when he was struck and "it wasn't like [Smith] was trying to kill me."  Doc. No. 52-1 at 20.  Plaintiff has not alleged he sustained any physical injuries as a result of Smith hitting his vehicle.  Plaintiff admits that after Smith allegedly hit his car, he fled in his vehicle yet again.

Plaintiff alleges only *de minimis* injuries as a result of Smith's alleged excessive force.  The Eighth Circuit has held "that de minimis *injury* does not foreclose a claim of excessive force under the Fourth Amendment."  *Peterson v. Kopp*, 754 F.3d 594, 601 (8th Cir. 2014).  Rather, "[t]he appropriate inquiry is 'whether *the force used* to effect a particular seizure is reasonable.'"  *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

11

Smith was entitled to use force to prevent a suspect from fleeing a traffic stop.  *See Moore-Jones v. Quick*, 909 F.3d 983, 986 (8th Cir. 2018).  This Court has noted "the obvious threat posed by a fleeing motorist—not just to the officer but also to the public[.]" *Gerling v. City of Hermann, Mo.*, No. 4:17-cv-02702-JAR, 2020 WL 619509, at *2 (E.D. Mo. Feb. 10, 2020).  In *Moore-Jones*, the Eighth Circuit held that an officer was entitled to qualified immunity when the officer used his car to stop the plaintiff's vehicle under circumstances that did not appear to present any obvious danger to the officer, the motorist, or the public.  The police officer pulled the plaintiff over for an expired registration, and although the plaintiff initially stopped, she then drove away in a low-speed chase, approximately 35 miles per hour in a 55-mile-per-hour zone.  *Id*.  The officer implemented a precision immobilization technique, in which he hit the rear end of the plaintiff's vehicle, causing it to spin out and stop.  *Id*.  The plaintiff and her passenger were both injured.  *Id*.  The Eighth Circuit granted the officer qualified immunity, finding the use of force was within "the hazy border between excessive and acceptable force." *Id*. at 987.

Smith's use of his car to prevent Plaintiff from fleeing in his vehicle was not unreasonable under the circumstances.  Plaintiff fled from a traffic stop and momentarily paused his car, shifting it into reverse.  Smith noticed the reverse lights of the vehicle were on, indicating Plaintiff was not parked and may attempt to drive away.  Smith then hit Plaintiff's vehicle with his own car, going 20 miles per hour or less, in an attempt to prevent Plaintiff from escaping.  Plaintiff sustained no physical injuries.  Plaintiff reversed his vehicle and fled seconds after Smith allegedly hit his car.  Smith is entitled

to qualified immunity for using his vehicle to prevent a suspect from fleeing a traffic stop.  Plaintiff has not alleged a use of force that is clearly a constitutional violation, therefore Smith is entitled to qualified immunity on the excessive use of force claim.

Claim against Beckman

Plaintiff next alleges Beckman used excessive force against him by tasering him after Plaintiff paused his car at the cul-de-sac.  Beckman is entitled to qualified immunity for his use of the taser.  "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 109 S. Ct. at 1872.  Plaintiff admits that he fled from the police after the initial traffic stop.  He paused briefly in the cul-de-sac.  Plaintiff does not dispute that rather than parking his vehicle, Plaintiff shifted the car into reverse.  Plaintiff then stuck his hands out of the car window.  Beckman noticed the reverse lights were on and believed Plaintiff would attempt to flee.  Beckman used his taser on Plaintiff and mere seconds later, Plaintiff reversed his vehicle and drove away.  Plaintiff had not yielded to the officer at the time he was tasered.

The use of a taser to prevent a suspect from fleeing is not an excessive use of force.  *See McKenney v. Harrison*, 635 D.3d 354, 360 (8th Cir. 2011).  *See also Brossart v. Janke* 859 F.3d 616, 625 (8th Cir. 2017) ("repeated use of the taser against a potentially violent, defiant arrestee" is not a clear constitutional violation).  Beckman's use of the taser on a suspect resting arrest is not a clear violation of an established right.  He is entitled to qualified immunity for the claim relating to his use of his taser.

Claims against Beckman, Smith, Panus, and Mocca

13

Plaintiff claims that Beckman, Smith, Panus, and Mocca used excessive force when they allegedly beat him behind Marco's Pizza.  Plaintiff claimed in his complaint that the officers beat him with their batons and kicked him.  Plaintiff resisted the officers by punching and kicking at them as they tried to subdue him.  Plaintiff stated in his deposition that the beating continued for several seconds after he was handcuffed, at which time Mocca told the officers to stop and they obeyed.  Plaintiff was examined later that day at Christian Hospital Northwest and the nurse found he had sustained no serious injuries.

The officers are entitled to qualified immunity on Plaintiff's claims related to the use of force behind Marco's Pizza.  Officers are entitled to use force when effecting an arrest.  *See Graham*, 109 S. Ct. at 1872.  The degree of force appropriate depends on the facts of the case "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The Court cannot say Defendants' alleged use of force in this case is a clear violation of Plaintiff's constitutional rights.  Plaintiff had already fled from the officers twice.  He resisted the officers by punching and kicking at them.  He admitted that the Defendants' use of force ended within seconds of the officers handcuffing him.  A use of force "just after [plaintiff] was fully handcuffed…at the tail end of a tumultuous struggle" is objectively reasonable.  *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) (Use of taser on plaintiff just after he was handcuffed is objectively reasonable). Accepting Plaintiff's statements as true, the fact that the force continued for several

14

seconds after Plaintiff was cuffed was not unreasonable under the circumstances.  The officers were crowded around Plaintiff, who was punching and kicking at them.  Within seconds of being told to stop, the officers all obeyed.  Plaintiff sustained no serious injuries from the incident.  For these reasons, the officers are entitled to qualified immunity.

**Failure to Supervise**

Plaintiff next claims Mocca violated his rights by failing to supervise the other officers because Mocca allowed the officers to use excessive force against him outside Marco's Pizza.  "A failure to supervise claim brought under § 1983 will 'automatically fail for lack of an underlying constitutional violation.'" *Henry v. Johnson*, 950 F.3d 1005, 1015 (8th Cir. 2020) (quoting *Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 419-20 (8th Cir. 2017)).  Plaintiff has failed to show any underlying constitutional violation.  The officers are entitled to qualified immunity for the excessive force claim stemming from Plaintiff's arrest at Marco's Pizza.  Plaintiff has not alleged any other violation of his constitutional rights related to Mocca's alleged failure to supervise.  Moreover, Mocca did in fact supervise the officers and directed them to stop once Plaintiff was placed in cuffs.  For these reasons, Mocca is entitled to summary judgment on Plaintiff's claim for failure to supervise.

**Medical Treatment Delay**

Plaintiff alleges Defendants Beckman, Panus, and Williams violated his rights by preventing him from seeking medical care.  He claims the Defendants threatened to beat him if he sought medical care after his arrest.  Plaintiff's claim fails because Plaintiff has

failed to show either the objective or subjective elements necessary to state a claim for deliberate indifference to medical needs.

A Fourteenth Amendment claim that defendants were deliberately indifferent to Plaintiff's medical needs involves both an objective and a subjective component. *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (holding pretrial detainee's claim for deliberate indifference to serious medical needs is analyzed under the Fourteenth Amendment but is analyzed under the same deliberate indifference standard as is applied to convicted inmates under the Eighth Amendment); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Farmer v. Brennan,* 511 U.S. 825 (1994)). The plaintiff must demonstrate (1) that he suffered objectively serious medical needs and (2) that the defendants actually knew of but deliberately disregarded those needs. *Coleman,* 114 F.3d at 784. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to [a constitutional] violation only if those needs are 'serious.'" *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Liability arises only when Defendants "knew that the condition created an excessive risk to the [plaintiff's] health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996).

Plaintiff has failed to show that he suffered from objectively serious medical needs. A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman* at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Plaintiff has failed to allege the existence of such a

16

need.  He was examined by a nurse at Christian Hospital Northwest and the nurse found

he was "[w]ell-appearing; well-nourished; in no apparent distress," although she did note

an abrasion on his head.  Plaintiff was examined daily for the next week at the St. Louis

County Jail.  He neither raised any medical needs requiring treatment nor were any

identified by a medical professional.

Plaintiff has also failed to show that Defendants actually knew of the medical need

and deliberately disregarded it.  Plaintiff has failed to show the existence of any

objectively serious medical need.  "To establish a constitutional violation, it is not

enough that a reasonable official should have known of the risk, a plaintiff must establish

that the official in question did in fact know of the risk." *Gregoire v. Class*, 236 F.3d

413, 417 (8th Cir. 2000).  Because Plaintiff has failed to show he had any objectively

serious medical need, he has also failed to show Defendants had any knowledge of such a

need.  Defendants are entitled to summary judgment.

## Failure to Intervene in Use of Excessive Force

Plaintiff next claims Mocca, Panus, Smith, and Williams violated his rights by

failing to intervene to prevent the use of excessive force when they arrested him behind

Marco's Pizza.  The Eighth Circuit has recognized that "an officer who fails to intervene

to prevent the unconstitutional use of excessive force by another officer may be held

liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th

Cir. 2009); *see also Krout v. Goemmer*, 583 F.3d 557 (8th Cir. 2009).  An officer may be

held liable if he "(1) observed or had reason to know that excessive force would be or

was being used, and (2) the officer had both the opportunity and the means to prevent the

harm from occurring." *Nance*, 586 F.3d at 612 (quoting *Floyd v. City of Detroit*, 518

F.3d 398, 406 (6th Cir. 2008)); see also Farrington v. Smith, 707 F.3d 963, 972 (8th Cir.

2013).

Plaintiff must show a use of excessive force in violation of his constitutional rights

as an element of his claims against Defendants for failing to intervene.  The Court has

already determined that Plaintiff failed to show Defendants used excessive force in

violation of the constitution in effecting the arrest.  Plaintiff cannot show this essential

element, therefore, summary judgment is appropriate.

### State Law Claims

Plaintiff's remaining claims are state tort claims for assault and battery and

intentional infliction of emotional distress under Missouri law.  The sole basis for the

Court's jurisdiction over these remaining state-law tort claim is 28 U.S.C. § 1367(a)

which permits a district court to exercise supplemental jurisdiction over claims that are

part of the same case or controversy as the federal claims falling with the district court's

original jurisdiction.  However, a district court may, in its discretion, decline to exercise

supplemental jurisdiction when "all claims over which it has original jurisdiction" have

been dismissed.  28 U.S.C. § 1367(c)(3); *Lindsey v. Dillard's, Inc.,* 306 F.3d. 596, 598–

99 (8th Cir.2002); *Thomas v. Dickel,* 213 F.3d. 1023, 1026 (8th Cir.2000).

Since the Court has determined that Defendants are entitled to summary judgment

on Plaintiff's other claims, the Court finds that in the interest of justice and judicial

economy, the Court will decline to exercise supplemental jurisdiction over any and all

state-law tort claims as contained in the plaintiff's complaint.  *See, Thomas v. Dickel,* at

1026.  Plaintiff's state-law tort claims for assault and battery and intentional infliction of emotional distress will be dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment on Plaintiff's federal claims is **GRANTED**.  ECF No. 50.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims of assault and battery and intentional infliction of emotional distress are dismissed without prejudice.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2020.

19